1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

THE BOARD OF TRUSTEES OF THE
LELAND STANFORD JUNIOR UNIVERSITY,

      Plaintiff,

  v.

STANFORD REHAB MEDICAL GROUP

      Defendant.
_____/

No. C-08-2117 EDL

**ORDER GRANTING PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT
AND ISSUING INJUNCTION**

     On April 23, 2008, Plaintiff filed this action against Defendant Stanford Rehab Medical Group for trademark infringement, trademark dilution, false designation of origin and unfair competition. After entry of default on July 11, 2008, Plaintiff filed a motion for entry of default judgment. The motion came on for hearing on September 9, 2008. Attorney Sarah Flanagan appeared for Plaintiff. Defendant did not file an opposition to Plaintiff's Motion, but did appear at the hearing through Attorney Brock Phillips. At the hearing, Defendant did not oppose entry of judgment, nor the terms of the injunction sought by Plaintiff, but only disputed the request for attorneys' fees. The parties have consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c).

**Background**

     Plaintiff has been using its Stanford name and trademark since at least as early as 1891, and owns numerous trademark registrations worldwide, including several United States trademark registrations. See Declaration of Laura Gustafson ¶ 2. Plaintiff has been providing medical services under the Stanford name and mark since at least as early as 1908, and for many years, has been

operating the Stanford Medical Center, the Stanford Medical School, the Stanford Hospital and its affiliated clinics and labs under the Stanford name and mark.  See id. at ¶ 3.  In the fall of 2007, Stanford learned that Defendant was using the name and mark "Stanford Rehab Medical Group" and/or "Stanford Rehab Weight Loss Clinic" in connection with one or more medical clinics, offering, inter alia, weight loss and weight management treatments and programs.  See id. at ¶ 4. The clinics were being operated in part by Dr. Milliard Syverain.  See id.

On October 10, 2007, Plaintiff sent a cease and desist letter to Dr. Syverain.  See id. at ¶ 5. On October 19, 2007, Dr. Syverain indicated that Defendant would comply with Plaintiff's demands and terminate all use of the Stanford name and mark.  See id.  Plaintiff sent additional letters on December 21, 2007 and January 29, 2008 seeking confirmation that Defendant had ceased using the Stanford name and mark, and enclosing a proposed settlement agreement.  See id. at ¶ 6.  Dr. Syverain did not respond to those letters and did not execute and return the settlement agreement. See id. at ¶ 6.  Plaintiff contacted Dr. Syverain again on March 4, 2008 because Plaintiff learned that Defendant continued to use the Stanford name and mark.  See id. at ¶ 6.  Plaintiff's subsequent research revealed that Defendant continued to use the Stanford name and mark.  See id. at ¶ 7 (stating that records of the California Secretary of State showed that the Defendant corporation had not been dissolved, that the name and mark appeared on exterior signage and that Defendant continued to use business cards with the Stanford name and mark).  Accordingly, Plaintiff filed this trademark infringement action on April 23, 2008.

**Discussion**

Federal Rule of Civil Procedure 55(b)(2) authorizes the Court to enter judgment against a defendant against whom a default has been entered, assuming that defendant is not an infant, is not incompetent or in military service.  Defendant here is a corporation and therefore not an unrepresented minor, incompetent or in military service.  See Gustafson Decl. at ¶ 9.

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."  Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977) (citing Pope v. United States, 323 U.S. 1, 12 (1944)).  In exercising its discretion to grant default judgment, the court may consider the following factors: (1)

**United States District Court**
For the Northern District of California

the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. See Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Generally, upon entry of default, the factual allegations of the complaint are taken as true, except for those relating to damages. See Televideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir.1987).

Here, the Eitel factors weigh in favor of default judgment. Most importantly, the substantive claims in the complaint appear to have merit and the complaint is sufficient to state those claims. To prevail on a trademark infringement claim, a plaintiff must prove the existence of a valid trademark and the subsequent use of that mark by another in a manner likely to create consumer confusion. See Applied Information Sciences Corp. v. eBay, Inc., 511 F.3d 966, 969 (9th Cir. 2007).

Registration of a mark on the principal register in the Patent and Trademark Office is prima facie evidence of the validity of the mark. See id.; 15 U.S.C. § 1115(a) (stating that registration of a mark "on the principal register provided by this chapter and owned by a party to an action shall be admissible in evidence and shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce. . . ."). In its complaint and through declarations, Plaintiff has met the first prong of the test for trademark infringement by showing that it owns various registered trademarks. See Compl. at ¶¶ 9-10; Ex. A-C; Gustafson Decl. at ¶ 2.

The Ninth Circuit considers eight factors to assess the likelihood of confusion: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and degree of care likely to be used by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979), abrogated in part on other grounds by Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792, 810 n. 19 (9th Cir.2003). In addition, "[w]hen the alleged infringer knowingly adopts a mark similar to another's, [a court] must

3

United States District Court
For the Northern District of California

1    presume that the public will be deceived." <u>M2 Software, Inc. v. Madacy Entm't</u>, 421 F.3d 1073,

2    1085 (9th Cir. 2005).

3        In its complaint, Plaintiff has sufficiently alleged the likelihood of confusion pursuant to the

4    <u>Sleekcraft</u> factors.  Plaintiff alleges the strength of its trademarks that "are famous, known

5    throughout California, the United States and the world for clearly and unmistakenly calling to mind

6    Stanford as the source of high quality, leading edge medical, clinical, educational and research

7    services, and other goods and services."  Compl. ¶ 17.  Where, as here, the services at issue are

8    "related or complementary," the likelihood of confusion is heightened.  <u>M2 Software</u>, 421 F.3d at

9    1082.  Plaintiffs alleges that it is "comprised of a number of graduate schools and associated

10   research and clinical programs, including the Stanford Medical Center, which itself is comprised of

11   the Stanford School of Medicine, the Stanford Hospital and a number of affiliated labs and clinics,"

12   including "Stanford's Center for Weight Loss Surgery, a surgical specialty clinic focused on weight

13   loss treatment and bariatric surgery."  Compl. ¶¶ 6, 15.  Plaintiff alleges that Defendant has used the

14   Stanford name and mark in connection with its weight loss clinics in San Jose, California and

15   Redwood City, California.  <u>See</u> Compl. ¶¶ 18-19.  While Plaintiff has not alleged actual confusion,

16   Plaintiff alleges that consumers are likely to be confused about the origin of Defendant's services

17   and mistakenly believe that Defendant is affiliated with Plaintiff.  <u>See</u> Compl. ¶ 29.  Although

18   Plaintiff does not allege that the parties use similar marketing channels, both Plaintiff and Defendant

19   do business in the greater San Francisco Bay Area.  <u>See</u> Compl. ¶¶ 16, 19.  With respect to

20   Defendant's intent, "[w]hen the alleged infringer knowingly adopts a mark similar to another's, [a

21   court] must presume that the public will be deceived."  <u>M2 Software</u>, 421 F.3d at 1085 (citing

22   <u>Sleekcraft</u>, 599 F.2d at 354).  Plaintiff has not made any allegations regarding expansion of product

23   lines, which does not necessarily apply in this context, but even if this factor weighed against

24   finding a likelihood of confusion, it is substantially outweighed by the remaining <u>Sleekcraft</u> factors.

25        The remaining <u>Eitel</u> factors also weigh in favor of granting default judgment.  First, if the

26   motion were denied, Plaintiff would be prejudiced because it would likely be without a remedy.

27   Although Plaintiff's counsel received correspondence from Defendant before this case was filed,

28   there is no evidence that Defendant has been in contact with Plaintiff since that time.  <u>See</u> <u>Pepsico,</u>

*United States District Court*
*For the Northern District of California*

1    Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for

2    default judgment is not granted, Plaintiffs will likely be without other recourse for recovery.").

3    Second, Plaintiff does not seek monetary damages.  Instead, Plaintiff seeks injunctive relief and an

4    award of fees and costs, which is not disproportionate or unreasonable given the extent of

5    Defendant's infringement.  Finally, because Defendants did not file an answer to the complaint,

6    there is little to suggest that there is a possibility of a dispute concerning material facts.  Nor is it

7    likely that Defendant's default was due to excusable neglect.  Plaintiff attempted to follow up with

8    Defendant on June 20, 2008 and July 2, 2008 after the complaint was filed, but Defendant did not

9    respond.  See Gustafson Decl. at ¶¶ 11-12.

10          Accordingly, the motion for default judgment is granted.

11   **Injunctive relief**

12          Although Plaintiff's complaint seeks monetary damages, Plaintiff requests only injunctive

13    relief and attorneys' fees through this motion.  The Lanham Act provides authority for the Court to

14    issue an injunction.  See 15 U.S.C. § 1116(a); Century 21 Real Estate Corp. v. Sandlin, 846 F.2d

15    1175, 1180-81 (9th Cir. 1988) ("Injunctive relief is the remedy of choice for trademark and unfair

16    competition cases, since there is no adequate remedy at law for the injury caused by a defendant's

17    continuing infringement.").  Further, injunctive relief is available as part of a default judgment.  See

18    Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 502 (C.D. Cal. 2003).

19          Here, Plaintiff alleges that unless Defendant's conduct is enjoined, Defendant's use of the

20    names and marks "Stanford Rehab Medical Group" and "Stanford Rehab Weight Loss Clinic" will

21    "continue to tarnish Stanford's registered and common law trademarks and [will] dilute[] the

22    exclusive association in the public's mind between those Stanford marks and Stanford's high quality

23    services, including its world-renowned medical, clinical and health services."  Compl. ¶ 30.  Plaintiff

24    also alleges that Defendant's infringement is likely to injure Plaintiff's business reputation.  See

25    Compl. ¶ 39.  Although Defendant's counsel stated at the hearing that Dr. Syverain has attempted to

26    change his business name through the Secretary of State, the threat of continued infringement is real

27    based on Defendant's failure to successfully dissolve his corporation, or to remain in contact with

28    Plaintiff's counsel, or to participate in this case until the hearing.  Moreover, Defendant does not

1 oppose entry of the requested injunction.  Therefore, Defendant shall be permanently enjoined from

2 further infringement of Plaintiff's trademarks.

3 **Attorneys' fees**

4 Attorneys' fees may be awarded to the prevailing party under the Lanham Act in exceptional

5 cases.  See 15 U.S.C. § 1117(a).  A trademark infringement case may be deemed exceptional where

6 the defendant is found to have acted maliciously, fraudulently, deliberately or willfully.  See

7 Earthquake Sound Corp. v. Bumper Indus., 352 F.3d 1201, 1216 (9th Cir. 2003); see also Classic

8 Media, Inc. v. Mewborn, 532 F.3d 978, 990 (9th Cir. 2008) ("Exceptional circumstances can be

9 found when the non-prevailing party's case is groundless, unreasonable, vexatious, or pursued in

10 bad faith.").

11 In Earthquake Sound, the defendant filed an application to publish its "Carquake" mark,

12 knowing of the existence of the "Earthquake" mark, which was quite similar.  See id. at 1217.  The

13 defendant informed one distributor that its products were the same as, but cheaper than, the

14 plaintiff's competing products.  See id.  The defendant used similar product identification codes,

15 creating further similarities between the products.  See id. at 1218.  The court in Earthquake Sound

16 considered the ample evidence of actual confusion as especially important.  See id.  When the

17 plaintiff informed the defendant of the possible infringement, the defendant did not take any

18 reasonable measures to investigate, and subsequently refused to settle and persisted in marketing the

19 Carquake line of products.  See id.  The court determined that the totality of the case showed

20 deliberate and willful infringement and affirmed the district court's attorneys' fees award.  See id.

21 ("Bumper utilized a mark that was similar to that of its competitor, was informed of actual

22 confusion, and deliberately chose not to make a reasonable effort to ascertain whether it might

23 actually be infringing.  Bumper persisted despite further attempts by Earthquake to inform Bumper

24 of consumer confusion.  And, as far as the properly submitted facts of this case indicate, Bumper

25 agreed to cease using the 'Carquake' mark and then reneged on that agreement."); but cf. Classic

26 Media, 532 F.3d at 990-91 (affirming district court's denial of fees where fee request was based on

27 the argument that the Lanham Act claim was foreclosed by Supreme Court precedent, finding that

28 the claim involved close questions in an unsettled area of law, and was not objectively unreasonable

United States District Court
For the Northern District of California

6

1    or improperly motivated).

2         Here, while the course of infringing conduct is sufficiently similar to the facts in Earthquake

3    Sound to establish willfulness, the degree of willfulness is not as great.  There is no evidence of

4    actual consumer confusion.  As in Earthquake Sound, when Dr. Syverain was contacted by

5    Plaintiff's counsel prior to this litigation, he acknowledged that he understood Plaintiff's case and

6    agreed to take steps to remedy any infringement, but thereafter, he stopped communicating with

7    Plaintiff and continued to infringe.  According to defense counsel, Dr. Syverain made unsuccessful

8    attempts through the Secretary of State to change his business name.  He used self-help to cover the

9    Stanford name on his business sign in a manner that did not completely obscure the name.  Most

10   egregiously, he continued to use Plaintiff's name and mark even after receiving additional cease and

11   desists letters, and even after this case was filed.  See Gustafson Decl. ¶¶ 5, 6, 7, 11.  With regard to

12   the business sign, Defendant's counsel stated at the hearing that because Defendant is a tenant, it has

13   been more difficult to change the sign.  However, Defendant told Plaintiff's counsel the issue was

14   instead that it would be too expensive, and he apparently did not attempt to change his business card

15   until at least the time this suit was filed.  Further, there has been no showing that Dr. Syverain

16   sought legal assistance upon being informed of possible infringement; instead, it appears that he

17   consulted counsel only once this litigation commenced.  On the whole, Dr. Syverain's conduct on

18   behalf of Defendant demonstrates willful infringement sufficient to establish the exceptional nature

19   of this case for purposes of fees and costs.

20        Plaintiff seeks $16,945.72 in fees incurred in preparing the complaint in this matter, seeking

21   to obtain a stipulated judgment from Defendant and prosecuting this action through default.  See

22   Gustafson Decl. ¶ 16, Ex. C.  The Court understands that Plaintiff does not seek fees for work done

23   prior to the filing of the complaint.  Partner Christopher Ball billed 7.4 hours on this case at an

24   hourly rate of $550.00.  See Gustafson Decl. ¶ 16.  Associates Laura Gustafson and Marley Degner

25   billed 18.3 hours at $475.20 per hour and 16.1 hours at $259.60 per hour, respectively.  See id.  The

26   Court finds that the hourly rates and number of hours are reasonable, and that there was no improper

27   billing.

28        However, an award of fees under § 1117(a) is discretionary.  Further, "[u]nder both sections

*United States District Court*
For the Northern District of California

United States District Court
For the Northern District of California

1    1117(a) and 1117(b), awards are never automatic and may be limited by equitable considerations."

2    See Perfumebay.com. Inc. v. eBay.com, Inc., 506 F.3d 1165, 1178 (9th Cir. 2007).  Here, although

3    the amount of fees sought in this case is reasonable, there are some counterbalancing equitable

4    considerations, in particular, Dr. Syverain's early acknowledgment of infringement and his attempts

5    (albeit inadequate) to remedy at least some of the infringement, that justify some reduction of fees.

6    Accordingly, the Court reduces Plaintiff's fee award by one-third, for an award of $11,297.15.

7    **Conclusion**

8          The Court grants Plaintiff's motion for default judgment for fees in the amount of $11,297.15

9    and enters the following permanent injunction:

10         a) Enjoining and restraining defendant and its agents, servants, and employees
           from directly or indirectly using the STANFORD name, marks and logos or any
11         colorable imitation thereof, or any other terms that infringe or dilute STANFORD'S
           name, marks and logos in any manner;
12
           b) Requiring that all labels, signs, prints, business cards, stationery, packages,
13         wrappers, receptacles, websites, domain names and advertisements bearing the
           STANFORD name, mark or logo, or any other colorable imitation thereof, or any
14         other terms that infringe or dilute Stanford's STANFORD family or marks be
           destroyed;
15
           c) Requiring that defendant cease and desist using or making reference to the
16         STANFORD mark and name in any way so as to constitute unfair competition or
           deceptive, untrue, or misleading advertising.
17
           **IT IS SO ORDERED.**
18
     Dated: September 12, 2008
19
20                                                    _____
                                                      ELIZABETH D. LAPORTE
21                                                    United States Magistrate Judge

22

23

24

25

26

27

28